May it please the Court, my name is Craig Shagan, together with my co-counsel, Tracey Hubbard, we represent the petitioner in this case. We would like to reserve five minutes of our time for rebuttal. This case, to our way of thinking, provides a fairly straightforward question, and that is whether you can be deported under U.S. 8 U.S.C. 1227 A to B I for a crime or excuse me, a violation, a conviction for a law or regulation relating to a controlled substance when that controlled substance is not a federal controlled substance. And I mention this because I want to make it clear that what we're not arguing, we're not arguing that the word relating isn't broad, we take it in as broad as possible meaning. But what we're arguing is that the controlled substance itself must be a controlled substance as defined in section 102. And there are a couple of reasons for that. First and the most important reason is that's what the statute says. The statute quite clearly says that it's a, an alien at the time after admission has been convicted of a violation, any law or regulation of the state, the United States or a foreign country relating to a controlled substance as defined under section 102 of the federal law. The problem, the problem is this. On page 18 of your brief, you said the following, a comparison between the Pennsylvania controlled substance schedules and the federal controlled substance schedules establishes that the Pennsylvania controlled substance schedules are categorically broader than the INA, okay? So then you then supply a footnote and explain it, footnote seven, and it has, you list different items and you say, for example, under the Pennsylvania schedules, the following chemical compounds are listed as controlled substances under schedule one and you go in there, gamma hydrocarbic acid, I don't know. But anyway, the thing is that at the time of the conviction, the federal law listed in the regulation 21 code of federal eight, federal regulation section 1308.13, listed that as an item that was a, under the federal schedule two, if you look at it, and we did look at it, I couldn't find anything. Now, later on there were changes, yes, but it was as of the date of the conviction. I don't know of anything that was a, that would justify a conclusion that the Pennsylvania law was broader. Well, I have several responses to that. First of all, if I made a mistake, it's a complicated statute and I would apologize. However, I would note that there are some things that are very clearly not on the, that are not on the federal. Was that as of the date of his drug paraphernalia conviction? I believe so. Because we made an analysis. I had somebody do that little boring job. You know, it's not the most interesting thing in the world, but that's the way it goes.  I believe Salvia Divinorum is on the state list, it is not on the federal list. And I think that was back in 2009, but I don't want to swear an oath to it right now because part of the problem here, and it's part of the reason why it's so important to have one definition, is that these change every year. And they change even sometimes more frequently than once a year. And sometimes the state puts things on the schedule that the feds do not. There are exemptions, for instance, in the federal schedule that don't exist in the state schedule. So, like peyote, there's certain exemptions for it statutorily. There isn't in Pennsylvania. Salvia Divinorum, which I know sounds like a curse from Harry Potter, but it's, it actually is a substance and I think there are two or three states that can put that on their list. Pennsylvania does. And I would remind the court that this is not just state statutes and not just Pennsylvania's, but it's also foreign statutes. So, for instance, in Dubai, poppy seeds are a controlled substance and, in fact, visitors to Dubai are warned to make sure that they don't bring, you know, poppy seed bagels with them because, in fact, there it is a controlled substance. The burden was, in any event, upon the federal government to prove that the substance, whatever that substance was, was on the federal regulation. And they didn't do that. And it's never been argued by anybody up until your very, you know, good question that they might be identical. And they're not identical. The isomers are defined differently. In the federal statute, it is a broader category of description of chemicals than, whereas the state labels them more individually than they do by general category. The plea that subjected him to removability was a plea to drug paraphernalia? Correct. And that's it? No specific drug mentioned? That's correct. All right. So, how do we determine whether it's related to a drug that's mentioned in Section 805? Or do we? Well, it could have been by the government, could have. Now, I will point out there was, and we've included it, of course, in the record and we've cited to it, that he was originally charged with marijuana possession and also... But we're only looking at drug paraphernalia. We're only looking at the drug paraphernalia. And that particular criminal complaint, the police criminal complaint in this case, was, you know, thoroughly unreliable. Would you agree that the drug, it's called drug paraphernalia, so that it is related to a controlled agent substance? Would you agree with that? I would. Well, I would agree that the crime of possession of drug paraphernalia is related to a controlled substance offense. It's just that in Pennsylvania, it's related to a Pennsylvania controlled substance where some of the Pennsylvania substances are, in fact, on the federal register. But Pennsylvania does not say, as defined under the federal list. What's the problem here? That we don't know what the drug substance is? We know what it is, right? Marijuana? No, we don't know. I thought he was also charged with possession of marijuana and a controlled agent substance. That's correct. And they dropped those charges. So that might indicate that it wasn't marijuana. I mean, you know, whatever it was. It was seven months. A plea bargain. Oh, I don't know. In any event, in Pennsylvania, it's one of the easiest things to do is to prove what actually happened because there should be a plea colloquy. A plea colloquy. That's true. That's a good point. That's not your burden. That's the government's. And throughout, from the immigration judge to the BIA, they're saying, it doesn't matter. We're not going to get into what the controlled substance is. So if we knew from a plea colloquy, the plea hearing, that the drug paraphernalia is related to, let's say, he pled guilty to a spoon and he was also charged with cocaine. Right. So then we would know that cocaine is listed in 805 and that would do it for the government. I think it would if, in fact, they showed the spoon was related to the cocaine. Yeah. I think that would. In most cases, and in fact, the Ruiz-Vidal and the S. Young case, I think addressed this rather squarely in California where they say, no, you have to show what the federal substance is. Where is it? Because I don't think you're briefed in it, that you mentioned some substance that was on the Pennsylvania schedule, but not on the federal schedule, as of the date of the conviction. As of the date. How do we make that determination? Because, frankly, your list in footnote seven does appear in the way the Code of Federal Regulations was written at that time. Okay. Your Honor, I cannot affirm to this Court that as of the date of his arrest, Salvia de Venora was on that list or not on that list. But it's not my burden. It's the government's. And if it was so easy for the government to do, all I'm asking is that they do it. And they didn't do it in this case. And no one argued, down below. I mean, the immigration judge did not say, oh, they're the same statute. Can we look at the complaint in the case? Are there documents that are part of the record that we can look at to see if there is a substance that is referenced in 805? Yeah. I would say normally you can. What's unique about this case, and what is very troubling if you're representing the alien before the immigration court, is you really don't know what they did in court. But why don't we call for supplemental briefing and for the two sides to specifically show us what there was on the state list on the critical date that didn't appear on the federal list? Because this is not a question of fact. It's a question of, well, I guess it's a fact. But it's not like who threw the baseball, you know what I mean? Correct. In other words, it's something you can look at the two lists. Why don't we just say, well, file supplemental briefs and say, well, I've looked at the list and this is what it is. Well, we would do that. Certainly I have no problem accommodating the court except for this, the one point that I want to make is I don't think that gets you to the final result because the important point here is the government has a burden. And I would point out that most of the aliens that appear before immigration court have no lawyers. These are very quick proceedings. And the government is supposed to present the evidence, the record of criminal conviction to show what happened. Mr. Ramos was fortunate that he had a lawyer that looked and said, well, wait a second here. I don't see that you've proven that this is on the federal list. The government didn't go back then and say, oh, yes, here is the list, you know, here it is. We can prove that. Mr. Shagan, I hear what you're trying to say. But and, you know, I think this may be where you and the government disagree on that. We have de novo review of this question. We have to look at whether or not the Pennsylvania statute under which your client was convicted is a statute relating to a controlled substance. And you want us to look at Mr. Rojas' case. And I believe what the government has argued is we need to look at Pennsylvania's statute. Well, I have no problem looking at the Pennsylvania. And in looking at Pennsylvania's statute, didn't Barone look at Pennsylvania's statute, although a different drug statute? No, it looked at the federal statute. Looked at the federal statute, but Barone looked at the INA, which is what we have to look at. Correct. We have to look at what the INA says. Correct. And look at the INA. And Barone says the important statutory phrase, and I'm at 159, is relating to a controlled substance and it modifies law or regulation. Correct. Okay. I would agree with that. And it goes on further to say analysis of the laws or regulation of conviction is required. Not the conviction. It's the laws. Now, it seems to me you're arguing a different, almost a different law. I hope not, because I actually agree with that. I think the relating goes to the violation. So, for instance, if you had paraphernalia, that is a crime relating to a controlled substance. So that's where you disagree with the government. Where I disagree with the government is the controlled substance has to be defined under federal law. And it's the government's burden to prove that. Similarity isn't enough. No, no. Close enough for government work is not a standard in the law. Is that the thing that you have like a burden on? It's a matter of law. In other words, we maybe didn't do it right, but we couldn't wait to look at your brief to see what you identified, of course. And we couldn't figure out what there was on the Pennsylvania schedule at that time that did not appear on the federal schedule. And the brief did not help, because it did appear on the federal schedule. I thought it was wrong. And for that, I apologize and take responsibility. But still, it's their burden to prove before the IJ that you have been convicted of a crime involving a federal controlled substance. And that is right. That's where I disagree with you. That's not their burden. Their burden is to show that you were convicted under a law that was related to a controlled substance. And it says right in the statute, as defined. I think the key point where I may disagree with what you're articulating and doing very well at it is that you focus on law, not conviction. But it says as defined in Section 102 of Controlled Substance. The parenthetical actually is part of Controlled Substance. Yes. To modify as Controlled Substance. Yes. And relating cannot modify the Controlled Substance. Relating cannot be modified as Controlled Substance. And therefore, it has to be in the Section 802. Right. And it's the burden of the government, by clear and convincing evidence, to show each and every element of removability. I don't have the name of the case, but it seems that we have cases that go both ways. The LELU is the decision relied on by the immigration judge, the BIA, and the government. And LELU is 2000 in Ninth Circuit. And after that, the Ninth Circuit gave us Ruiz-Vidal. It's LULI, by the way. Thank you, Your Honor. Yeah, LULI. Ruiz-Vidal and also S. Young, which seemed to me directly to contradict what they had done earlier. And I would point out that LULI. LULI. LULI. That was dictated in LULI. We don't really know what happened as far as the actual substance was concerned. We don't have a specific precedential opinion in our search. We couldn't find one, and we looked awfully hard. I think there should be. And I'm hoping that you would agree with me that the burden is consistent. And it's also consistent with matter of polis, which we cited. You say the plea colloquy would have helped because we know what he would have pled guilty to. Correct. And so we would have the drugs that would be related to the paraphernalia, and then we would check 805 and see if those drugs are mentioned there. That would be your way of looking at it. Correct. Is there anything else that could be looked at by the parties, like the complaint, like the police report? If there was a reliable criminal complaint which spelled it out, the answer would be yes. But in this case, you have a very unreliable criminal complaint, and that is a problem. It was not a problem that the government could not have overcome by going and getting additional evidence. They just didn't do it. If, in fact, the evidence would support them. I don't know what it would do. Okay. Let me get you back on. Okay. Thank you very much, Your Honor. Thank you. Mr. Hayes. Good afternoon, Your Honors. Timothy Hayes on behalf of the Attorney General. I think my colleague and I are talking past one another in a certain extent. Their position seems to be that the relates-to language in the removal ground can reach to non-possessory-type drug offenses, like drug paraphernalia, but the drug still has to be specifically identified on a federal schedule. And that's not consistent with the categorical approach where you compare the elements or the nature of the state statute of conviction to the federal generic definition. And now the federal generic definition does tie itself to the Patrolled Substances Act, but the relates-to language in the removal ground means that there doesn't need to be an exact match. I'm sorry. When you say the statute of conviction, you're still talking about a guilty plea to possession of drug paraphernalia. Is that right? Yes, Your Honor. Okay. And then you say that has to be then identified in Section 805. Is that correct? Under the categorical approach, we first look to the state statute. So we'd go to Pennsylvania. Yeah. So it's the nature of the crime. If Pennsylvania actually had controlled substances that were not in kind to the federal controlled schedule, then there might be a problem with over-breath. But you always have to go to 805, don't you, at some point or another? Yes. You would have to compare 805 with the Pennsylvania schedules probably at some point you would. That's what he says the case is. He says there are such substances in Pennsylvania. And I just pointed out in the brief where he gave an example of one that wasn't true. Right. Because it wasn't both. So I thought maybe it would be a good idea to ask the parties to simply make an analysis and see if there's any. Because if everything is also at the time of the conviction, at that time it was also in the federal schedule, which was in the Pennsylvania wasn't any broader than I think the case is over under any theory. You're right, Your Honor. And that would avoid addressing the tougher question. I'd be happy to supply that briefing. Do you think I'm right about that? That the Pennsylvania schedule was not broader at the time of the conviction than the federal schedule? Now, they change. And maybe it was broader later. But that doesn't matter. When I did my research, I did it from the current schedules. And I thought ketamine was one that was not on the federal schedule. No, but it's not then because it was a conviction at the time of the conviction. That's clear. Right. So you have to look at what the rules were then. Correct. And they vary. So you can't really answer the question because you haven't researched it. No, I do not know the answer to that question. The Wooley case is still good law in the Ninth Circuit. And in order for the Ninth Circuit to reach the holding in Wooley, they had to specifically find that the Arizona drug statute of conviction categorically matched the federal schedules, even though there was a couple drugs. Well, there's actually one drug right now in Arizona that is not on the federal schedules. How does the conviction here for drug paraphernalia match the federal list of controlled dangerous substances? Well, it doesn't have to match the list. The language says relates to a controlled substance. And then in a paraphernalia it says as defined in. So you look at the nature of the crime, like this court did in Broome. It looked at the nature of the Federal Drug Cosmetics Act. If Pennsylvania penalizes possession of paper, common paper that's used to roll cigarettes, that might be related to marijuana. But supposing there is, well, then it would have to be a plea to drug paraphernalia, I suppose. What if it's paper? Well, the board answered that question, and they said under Pennsylvania law, in order to be convicted of drug paraphernalia, it has to be tied to a specific controlled substance under the state schedules. So you couldn't just convict someone for having paper. They have to have the specific intent to use that paper with a control. Specific intent? Yes, Your Honor. You know, there's something a little unreal about this whole case. We've been talking about things. We've been talking about bringing poppy seed bagels into Dubai. Probably people who use bagels, eat bagels, probably don't go to Dubai. But, you know, there's something a little unreal about this case. He's esoteric. Well, I think it's a little unreal because it doesn't happen all that often. This type of question actually you would think would come up more, but it doesn't. And that's primarily because it's used as a removal ground for people to hold their green cards, but usually it's also tied to an aggravated felony, a drug trafficking aggravated felony. The way Mr. Shagan looks at this, he says that this term as defined in Section 802 modifies a controlled dangerous substance. So controlled substance has to be referenced specifically in 802. Your Honor, that overlooks the relates to language. If it said the violation of a law of a state involving a controlled substance. Related to a controlled substance, but that is modified by as defined in 802. But the comparator used in the categorical approach is relating to. It doesn't say involving. It says relating to. So it doesn't need an exact match. It's very close to what this Court does in cases like Barome, Dasani, Drake's. Congress has used it a lot in aggravated felony type definitions. That Arizona drug paraphernalia statute is virtually identical to Pennsylvania's statute section, isn't it? Yes, it is, Your Honor. And it is still good law. The Ninth Circuit has distinguished Ruiz-Vidal. I know a lot has been made of that case. Footnote 5 of that decision discusses that the Ninth Circuit only applies its analysis in Ruiz-Vidal to possession cases. Cases where you actually have to possess the drug. A specific essential element of the state statute of conviction is possession of a controlled substance. How do you get the conviction in this case? How do we get to say that it relates to a controlled dangerous substance defined in 802? Because of the nature of the drugs on the Pennsylvania schedules. We know what it is. It's drug paraphernalia. And it was, what was it, paper or? Well, we're talking statute, but what did he actually have? He had, according to the police criminal complaint, he had a baggie of marijuana and a rolling paper. Okay. So how do we get to say that relates to a controlled dangerous substance as defined in 802? Because in order to be convicted under Pennsylvania state law, there has to be a specific finding that the person intended to use that instrumentality with a controlled substance. Now, that can be inferred through circumstantial evidence, but it still has to be tied to a controlled substance, typically through the specific intent element of the state statute of conviction. But you still have to find it in 805, don't you? Not under the categorical approach. If the court were to say. . . It's an approach that you advocate. Exactly, Your Honor. Supposing Pennsylvania illegalizes possession of tobacco and puts it on a controlled substance list. Now, you can get arrested for possessing tobacco, but you would say that's okay. The statute says that you shall have no tobacco in your possession, but then you wouldn't have to look at 802, would you? No, Your Honor. Well, first I have to preface this. That's for the board to decide initially, but I would think that if Pennsylvania state law put tobacco on its controlled substance schedule, that would make it overbroad. It wouldn't be in kind. The type of drugs on the schedule wouldn't be in kind to the. . . Why couldn't they illegalize tobacco? Why would it be overbroad? Because tobacco is not in the same sort of category as marijuana, ketamine, cocaine, heroin, and any of the other substances that are on the federal schedules. I mean, Congress is concerned here. If it's construed as strictly as my colleague suggests, we would never use a categorical approach, hardly ever, in this type of analysis because. . . And it is the cocaine. And yet you link those two together. Well, I would say that tobacco is. . . I would think that the reasonable ordinary person would say tobacco isn't as serious as marijuana. And I would think the reasonable ordinary person would say. . . Pennsylvania can do what Pennsylvania wants to do. Exactly. If they want to illegalize tobacco and the legislature says we want to do that, they'll do that. But then it would not be. . . They can put it on the Pennsylvania Controlled Substance List. They absolutely can, Your Honor. That's the state's prerogative. And they're arrested, and somebody's arrested who happens to be an alien, and you say, well, you've been convicted of an offense, so we're going to deport you, but first let's see if it's an offense that's. . . I would say look at 805, but you would say, no, that's not necessary under the categorical approach. I would say you would have to look at 805, but you would look at the schedules and see how alike they are. I'm just saying that the schedules do not have to align exactly. That would be a huge difference, tobacco, because a very large number of people smoke tobacco, cigars, cigarettes, and so forth. Right, Your Honor. I mean, the schedules would be very. . . Substantively, they'd be very different if Pennsylvania had tobacco. It might only be one line, but substantively it would be a big difference. Exactly, Your Honor. The focus is not on the quantity difference, although that's certainly something you would consider, but also the kind, what kind of drugs are on both. And Congress use relates to language because, as I was saying earlier, you would almost never use a categorical approach if you interpret it strictly as a one-to-one match because very few states exactly align with the federal schedules. Correct me if I'm mistaken, but you seem to be writing out that entire parenthetical not in the statute as defined in Section 802. It's a benchmark, Your Honor, to compare what types of controlled substances on the state and federal schedules you're looking at. Yeah, I had one remedy here. I thought, well, maybe we could ask you to file briefs and take a look at the schedules and compare them. Another possible remedy here might be to remand the matter to the PIA and then the IJ to make a less than categorical determination. In other words, it might be that even now it could be developed what it was. Right, Your Honor. I'd be happy to do the supplemental briefing on what it was then and compare and see if there actually was a distinction. I think Judge Rayburn might have been referencing a modified categorical approach. Yeah. What's that going to do for you? Well, the Board sort of pushed the issue by not reaching the matter. But under the modified approach, if it were to be too broad, if the Pennsylvania schedules were considered overbroad and you would have to prove what specific substance Mr. Rojas had, the categorical approach would permit the Board in the first instance to look to the record of conviction. So it would be your shepherd documents. The indictment or the information in this case would be a criminal complaint. A plea colloquy, if it exists in the record, which it doesn't here, at least in its present form. There's probably very little difference between the two schedules, I would say, the federal schedule of illegal substances and the state schedule. As far as my research revealed, but I was using present-day schedules, I saw ketamine as the only distinction. And this court in Gould, which was an unpublished case, wasn't concerned by that. It was a New Jersey loitering statute, and it said we did compare the schedules. We don't know what substance he actually had in disorderly person's conduct, but we don't find any meaningful difference between New Jersey and federal law. If there happened to be a meaningful difference, the outcome might be different. And the argument here is there still is no meaningful difference between the Pennsylvania schedules and the controlled substance statute. Is Mr. Shagan correct that the plea colloquy might have resolved this entire problem? I don't know, Your Honor, because it's not in the record. And what I look at and what I see when I'm preparing this case is just what's in the record. Is there a reason why it's not in the record? I mean, it would seem to me to be quite helpful in resolving this problem. I don't have an answer for that, unfortunately. I don't really deal with the immigration trial court matters too much. I did clerk for an immigration judge, but it wasn't in Pennsylvania, so I'm not sure what they do at the DHS quarters there.  Thank you, Mr. Hayes. I just have a few quick points on rebuttal. Matter of Gould, I think, actually is a very good case to illustrate the difference of what we have. Matter of Gould, or I think that was the property of the case, the burden was on the alien to show that he had not committed a violation that would prevent him from getting immigration benefits. Completely different scenario. Then you must show, if you want to say then, well, you had poppy seeds and not something else, and that's what you were convicted of under the statute, show us. And that would be appropriate then for the alien to come in and show you that's what he had and that's what he was convicted of. But here it's the government's burden, and the government is supposed to come in and show that you were, in fact, convicted. Okay, then why not say, okay, they didn't meet that burden, so we're going to remand it for further proceedings, and they would have an opportunity on the remand to meet the burden? Because if, in fact, he should be removed from the country, why should it depend that he's not removed because of some failure of proof of something that's true? Well, if that were the case, they had their chance. I mean, keep in mind, this gentleman has been now in prison for almost two years, detained under 236C, not because of his criminal violation, which was just a $100 fine, but because of his immigration issues. He's been sitting in New York prison or Pike County prison or wherever while this is going on. Is he a permanent resident? He's a permanent resident. And this issue was raised not day two, not five months after, not six months after, right from the beginning. There's an issue here. And, you know, my colleague, when she entered the plea to the NTA, was extraordinarily careful in identifying it and highlighting the issue and gave the government all the chances in the world to do what the government's job is, prove your case. Now we're here. We have spent more time in this court on this case than collectively was spent below. I mean, these are fast proceedings. You know, it's not like going to common pleas court. Let me put it that way. And so what you are left with is a decision by the immigration judge saying, I don't care whether or not what that substance was. It doesn't matter. The only thing that matters is that he was convicted of a controlled substance violation of a state law, not looking at what that control, that it has to be a controlled substance as defined under federal law. Your only objection to saying, well, you don't care, but you better care, because we're sending it back to you to figure it out, is that, well, he's been in custody for so long it's unfair because of the delay. No, my real objection is they waived it. I mean, we argued it. We presented it. We didn't hide the issue. We put it right on the table, and they just didn't bother address it. Was this addressed before the BIA? Yes, it was in the brief, which I think is in the packet of material. This issue was in the brief before the BIA. The BIA just ignored it. And that's one of our frustrations is it's like playing tennis without a net. I mean, the BIA was told, look, what we're arguing here is this was, this has to be a controlled substance under federal law. It says so. That's what the statute says. Relating doesn't modify what the controlled substance is. Relating modifies the law that you violated that had the federal controlled substance associated with it. So, you know, and that, by the way, was also the holding in Borromea. I don't think Borromea is any different on that point. So, you know, here we've raised it before the IJ. Trial counsel didn't come back with documents. Trial counsel didn't argue before the immigration court that, oh, gee, you know, these statutes are the same or, gee, you know, we can prove that, in fact, it was under the federal law. They argued we don't have to do that. And the IJ agreed. And then we appealed to the BIA. And the BIA skipped over the issue. And now we're here. And, you know, it's, to go back again and to argue again, the issue that they didn't pick up on when we put it right in front of them seems to me, you know, giving the government two bites of the apple to do what they should have done in the first place. And if you give us an opinion that says what we're proposing, they will do that next time and you won't see us again because they're going to have to show. Was it heroin? Okay. It doesn't matter. Whether it's under a state controlled statute, a state paraphernalia statute, or a federal paraphernalia statute. Heroin, that's a federal controlled substance. No issue. But here, we don't know what it is. You know? And that's, it seems to me their time to have done this was a year ago. And they didn't do it. And, you know, as much as I, I, and we were direct about the issue. That's the other thing. It's not like we were hiding it or putting it under the table or this was some kind of sneak attack. They knew from day one what we were saying. Mr. Shagan, thank you very much. Thank you, Your Honor. I appreciate your argument. And Mr. Hayes as well. Thank you. We'll take your case and revise it. Thank you very much, Your Honor.